**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GEMINI INSURANCE COMPANY,

                    Plaintiff,

-v-

ACELLA PHARMACEUTICALS, LLC,
HAROLD ARTHUR DEAS,
THOMAS JEFFREY BRYANT,
NEIL AKERMAN, and SHEILA AKERMAN,

                    Defendants.

---

No. 18-cv-4378 (RJS)
**GEMINI'S MEMORANDUM OF LAW**
**IN OPPOSITION TO THE COURT'S**
***SUA SPONTE* MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO**
**TRANSFER VENUE**

Plaintiff, GEMINI INSURANCE COMPANY ("Gemini") opposes the Court's *sua sponte* motion to dismiss for improper venue or, in the alternative, to transfer, and states:

## INTRODUCTION

This is a declaratory judgment action regarding the existence of insurance coverage for defendants ACELLA PHARMACEUTICALS, LLC, HAROLD ARTHUR DEAS, and THOMAS JEFFREY BRYANT's (collectively "Acella" used in singular) intentional and unfair competitive practices regarding its folate products, which allegedly resulted in NEIL AKERMAN and SHEILA AKERMAN's (collectively, the "Akermans") daughter being born with a birth defect. Venue is proper in this district because a substantial portion of the events giving rise to this coverage action occurred in the Southern District of New York. Specifically, Acella's conduct that forms both the bases of Gemini's coverage position and the Akermans' singular theory of liability, occurred in this district. Further, Acella's conduct was determined to be false, misleading, and intentional in a binding decision issued by this Court in this district. The law is clear that venue can be proper in multiple districts, particularly in the

context of coverage. For all of these reasons and for judicial efficiency, this case should remain in this district before this Court.

## ARGUMENT AND CITATIONS OF AUTHORITY

### Standards of Inquiry

Venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the civil action occurred. 28 U.S.C. § 1391(b)(2). To determine whether venue is proper under this statute, a court must engage in a two part inquiry. First, the court must "identify the nature of the claims and acts or omissions that the plaintiff alleges give rise to those claims." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). Second, the court must determine "whether significant events or omissions material to those claims have occurred in the district in question." *Id.* Moreover, venue may be proper "in multiple judicial districts as long as a 'substantial part' of the underlying events took place in those districts." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005).

In evaluating a motion to dismiss for improper venue, the "plaintiff's factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor." *Torus Ins. (UK) Ltd. v. Coastal Towing, LLC*, No. 14CV9785-LTS-JFC, 2015 WL 2070235, at *2 (S.D.N.Y. May 5, 2015). *See also AEI Life, LLC v. Lincoln Ben. Life Co.*, 305 F.R.D. 37, 42 (E.D.N.Y. 2015) (court must view all facts in a light most favorable to the plaintiff in determining venue). Here, viewing the facts and allegations in favor of Gemini, significant events that are material to the existence of insurance coverage occurred in the Southern District of New York. Accordingly, venue is proper in this district.

I.   **THE NATURE OF GEMINI'S CLAIMS IS THAT THERE IS NO INSURANCE COVERAGE FOR ACELLA'S FALSE AND INTENTIONALLY MISLEADING LABELLING OF ITS FOLATE-CONTAINING PRODUCTS.**

As this Court is well aware, "courts are not, in general, required to determine the 'best venue,' but merely a logical one with a substantial connection to the litigation." *Gen. Capital Partners LLC v. Liberty Ridge, LLC*, No. 07 CIV. 4089 RJS, 2007 WL 3010028, at *1 (S.D.N.Y. Oct. 12, 2007) (Sullivan, J.) In insurance declaratory judgment actions, there is no bright-line rule regarding venue, and the inquiry will depend on the specific bases for an insurer's position regarding the lack of coverage. *Compare Am. S.S. Owners Mut. Prot. & Indem. Assn., Inc. v. Am. Boat Co., LLC*, No. 11 CIV. 6804 PAE, 2012 WL 1382278, at *3 (S.D.N.Y. Apr. 20, 2012) (venue proper in the district where underlying incident occurred) *with Home Ins. Co. v. Liberty Mut. Ins. Co.*, 678 F. Supp. 1066, 1071 (S.D.N.Y. 1988) (venue not proper where underlying tort took place because it had no connection to the declaratory judgment action, which was a dispute involving the interplay and interpretation of multiple insurance policies). Here, while the Akermans' underlying lawsuit against Acella is pending in a county that encompasses the Eastern District of New York, this district also has a substantial connection to the coverage action because the findings of fact and conclusions of law that inform Gemini's coverage position were alleged, tried, and adjudicated in the Southern District of New York. Indeed, the Akermans have repeatedly and affirmatively pled that there is collateral estoppel based on this Court's findings of fact and conclusions of law.

Accepting the allegations in the complaint as true, the nature of Gemini's claims in this action is that any liability of Acella based on collateral estoppel and arising out of its intentional and unfair trade practices regarding its folate-containing products is not covered under the Gemini insurance policy. The specific acts that Gemini alleges give rise to its claims in this coverage action are the binding findings of fact and conclusions of law in *Merck Eprova AG v.*

*Brookstone Pharm., LLC*, 920 F. Supp. 2d 404 (S.D.N.Y. 2013) (the "*Merck* decision") (DE 1-1)—which the Akermans are using as the fulcrum for their entire lawsuit against Acella over its folate products. The Akermans contend that but for Acella's false and misleadingly labelled folate product, the product would not have been sold to the Akermans and their daughter would not have been born with a birth defect. (DE 1, ¶2.) In the *Merck* decision, this Court found Acella liable under the Lanham Act for intentional false and misleading conduct, concluding Acella engaged in an intentional campaign to falsely advertise its folate product so that it would be linked in pharmaceutical databases to the pure folate products being prescribed to patients. (DE 1, ¶1.) To the extent that the Akermans have made this Court's findings part of their litigation, venue in this Court is not improper.

Indeed, to support its claims, a significant portion of Gemini's complaint is devoted to the Acella's conduct in the *Merck* litigation. (DE 1, Pgs. 3-6.) Acella intentionally set out to deceive its customer base. (*Id.*, ¶16.e.) It intentionally marketed Xolafin and Xolafin-B to create the impression in customers that the Acella products were identical to Merck's Metafolin. (*Id.*, ¶16.f.) Acella knew its products were a D, L-methylfolate blend that was distinct from Merck's pure, and more expensive, product but made the conscious decision to label its product with the pure chemical name to deceive its consumers. (*Id.*, ¶16.g,h.)

Acella's conduct in the *Merck* litigation is directly tied to its alleged liability in the Akermans' underlying lawsuit against it. Among the common allegations included in each cause of action, the Akermans specifically allege:

> The labeling of the mixed folate products including Neuropath-B was negligently and recklessly created by the defendants Acella, Deas and Bryan to maximize Acella's profits by misleading the public, (including the plaintiffs), pharmacies, and pharmaceutical databases into believing that it was identical to pure L-methylfolate products in order to capture a portion of the lucrative folate market that had previously been foreclosed to it.

(DE 1-2, ¶62.)

The Akermans agree with Gemini that "many, if not all of the facts and circumstances relating to the tortious conduct of Acella, Deas and Bryant that give rise to the injuries set forth in the *Akerman* litigation are identical to the facts and circumstances in the Merck litigation." (DE 37, ¶11.)[1] Specifically, the Akermans admit that the Acella product at issue in their underlying litigation, Neuropath-B, contained the Acella product Xolafin-B as its source of "folates," both of which were the products and substances at issue in the *Merck* action and were the subjects of this Court's binding findings of fact and conclusions of law in the *Merck* decision. (*Id.*) Accordingly, based on Gemini's allegations and the Akermans' allegations and admissions, Acella's conduct giving rise to the *Merck* litigation was the same conduct giving rise to the Akermans' lawsuit and Gemini's claims in this coverage action.

Gemini alleges it has no duty to defend or indemnify Acella under its policy in the Akermans' lawsuit for several reasons. First, the policy contains an Antitrust, Unfair Competition, Consumer Fraud exclusion which, among other conduct, precludes coverage for any loss based upon, arising out of or in any way related to unfair competition; false, deceptive, and unfair trade practices; consumer fraud; or violation of consumer protection laws. (DE 1, Pg. 11/14.) The basis for Gemini's position is rooted in Acella's conduct as fully and finally adjudicated in the *Merck* litigation. This Court determined that Acella violated the Lanham Act, a statute whose purpose is to regulate unfair competition, including unfair competition arising from falsely advertised products.

---

[1] It bears emphasizing that the Akermans also agree that venue is proper in this district under 28 U.S.C. § 1391(b). (DE 37, ¶1.)

Another ground in Gemini's complaint is that coverage is excluded for intentional, fraudulent, or criminal acts, as well as any loss based upon or arising out of an insured's intentional disregard of or deliberate or willful non-compliance with any national, federal, state, provincial, regional or local law, regulation, or ordinance. (DE 1, Pgs. 11-12.) Again, the basis for Gemini's claim is the same conduct in the *Merck* decision regarding Acella's intentional deception of its consumers. (*Id.*) Gemini also alleges there is no coverage based on the Known Critical Facts provision in its policy, which precludes coverage for any loss connected to a "critical fact," defined in part as a defect in Acella's product that is known by a representative of Acella prior to the 02/01/2014 policy inception date where the continued use of, without correction, would cause a severe adverse event. Because the Akermans allege a defect in Acella's product that was known by Acella and, left uncorrected, caused their child's birth defect, there is no coverage under the Known Critical Facts provision. (DE 1, Pg. 12/14.) Gemini's claim is supported by the *Merck* decision. (*Id.*)

Last, Gemini alleges there is no coverage based on its policy's Off Label Promotion Exclusionary Endorsement, which precludes coverage for any loss or defense costs arising out of or related to the "off-label promotion" of an insured's goods or products by or on behalf of an insured. (DE 1, Pgs. 12-13.) The basis for this claim is Acella's intentional marketing of its products to create the impression they were identical to pure folate products and intentional inducement of databases to falsely advertise its products, the same conduct in the *Merck* decision. (*Id.*) Accordingly, the nature and bases of Gemini's claims in this coverage action are Acella's intentional and deceptive conduct in the *Merck* litigation.

II.    **THE EVENTS THAT ARE MATERIAL TO GEMINI'S CLAIMS TOOK PLACE IN THIS DISTRICT; ACCORDINGLY, VENUE IS PROPER.**

The second part of this Court's inquiry must focus on "whether significant events or omissions material to [the plaintiff's] claims have occurred in the district in question." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). According to the Second Circuit, "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432-33. "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial." *Id.* at 433.

The venue statute "does not require venue in the district with the most substantial contacts to the dispute." *Astor Holdings, Inc. v. Roski*, No. 01 CIV. 1905 (GEL), 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002). "Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere." *Id.* Consequently, while the Akermans' lawsuit may be pending in a county that encompasses the Eastern District of New York, Acella's conduct that informs Gemini's coverage position—and the resulting factual and legal findings—occurred in the Southern District of New York.

The case of *Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 06 CIV. 599 (LBS), 2006 WL 3317030 (S.D.N.Y. Nov. 9, 2006) is factually similar and instructive here. An insurer brought a declaratory judgment action regarding insurance coverage for a collision between two ships on the Mississippi River near St. Louis, Missouri. The nature of the coverage

dispute turned on whether the towboat captain who caused the damage was an employee or borrowed servant of the plaintiff Navigator's insured. *Id.* at *1. Like here, however, Navigators argued that, under collateral estoppel principles, this coverage issue had already been resolved based on factual determinations made by a court in the Eastern District of Missouri in a related action involving the same insureds as defendants. *Id.*

Rather than decide the collateral estoppel issue, however, the New York court held that it was more appropriate for the Eastern District of Missouri to determine the preclusive effect of its prior judgment. *Id.* at *4. Importantly, the New York court also found it "in the interests of judicial economy for the court already familiar with the underlying cause of action giving rise to this coverage dispute … to decide this case as well." *Id.* at *5. Because the Eastern District of Missouri adjudicated the specific factual and legal issues that served as the basis for the insurer's declaratory judgment coverage action, the New York court transferred the case to that district. *Id.*

Here, following the simply logic in *Navigators*, this Court is the proper venue to preside over the parties' coverage dispute because this Court issued the binding findings of fact and conclusions of law that inform Gemini's claims. As detailed in the previous section, the nature of Gemini's claims arise out of Acella's adjudicated conduct of intentionally and misleadingly marketing its folate products. This conduct—and the resulting findings of fact and conclusions of law—occurred in the Southern District of New York before this Court. In the *Merck* litigation, the plaintiff alleged that venue was proper in the Southern District of New York because a substantial part of the events and injury giving rise to its claims occurred in that district. *See* Merck's third amended complaint, ¶10, attached as Exhibit "A."[2] Acella even admitted that

---

[2] In evaluating a motion to dismiss for improper venue, "a court may consider evidence outside the four corners of the complaint, including affidavits and other documentary evidence."

venue was proper in the district. *See* Acella's answer to Merck's third amended complaint, attached as Exhibit "B." Importantly, this Court held that venue in the Southern District of New York was proper under 28 U.S.C. § 1391. *See Merck Eprova AG*, 920 F. Supp. 2d at 416. Since venue was proper in this district in the *Merck* decision, it follows that venue is proper in this action as Gemini's various coverage positions are based almost entirely on the conduct alleged in *Merck* and the resulting legal conclusions in *Merck*.

In sum, the events giving rise to the *Merck* litigation occurred in the Southern District of New York. Gemini's claims in this action regarding the lack of insurance coverage arise out of Acella's conduct at issue in the *Merck* litigation. Acella's conduct was alleged, tried, and adjudicated in the Southern District of New York. Accordingly, venue is proper in this district.

### III.   VENUE IS PROPER IN BOTH THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK; CONSEQUENTLY, DISMISSAL IS NOT APPROPRIATE SINCE A VIABLE ALTERNATIVE FORUM EXISTS.

Gemini acknowledges that it could have also brought its action in the Eastern District of New York. The Second Circuit has made clear, however, that "[s]ection 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). Accordingly, if venue is proper in either district, dismissal is not warranted. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 358 (2d Cir. 2005); *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) ("A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.") In such scenarios, Gemini's choice of venue should be respected and afforded deference given the lack of prejudice to any of the defendants in having this Court preside over this action. *Torus*

---

*Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 211 (2d Cir. 2014).

*Ins. (UK) Ltd. v. Coastal Towing, LLC*, No. 14CV9785-LTS-JFC, 2015 WL 2070235, at *3 (S.D.N.Y. May 5, 2015) (refusing to consider transfer to alternative venue after determining that venue was proper in Southern District).

According to the U.S. Supreme Court, "the purpose of statutorily defined venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (emphasis in original). Here, the Akermans are citizens of New York and Acella does business nationwide, including in this judicial district. Accordingly, the Southern District of New York is not an unfair or inconvenient venue. *See Arabi v. Javaherian*, No. 13–CV–00456, 2014 WL 3892098, at *9-10 (E.D.N.Y. May 1, 2014) ("At a time when travel from Dallas, Texas to New York City can be accomplished in less than four hours, when documents can be scanned and digitally transmitted anywhere ... the best that can be said is that the scales tip evenly [for either jurisdiction]. Under these circumstances, deference to the plaintiff's choice of forum is warranted."). The same Acella defendants defended themselves in the *Merck* litigation involving the same conduct as this district. They cannot argue prejudice in defending against Gemini's allegations in this coverage action. The Akermans have consented to this venue.

In the event the Court concludes that this action has been brought in an improper district, however, "[d]ismissal is a severe penalty." *Rankel v. Kabateck*, No. 12 CV 216 VB, 2013 WL 7161687, at *8 (S.D.N.Y. Dec. 9, 2013). Instead, the Court may transfer the case "to any district or division in which it could have been brought" under Section 1406(a) if transfer is "in the interest of justice." *Id.* at *2 (citing 28 U.S.C. § 1406(a)). Transfer to a proper venue is more appropriate than dismissal to further "the ultimate goal of the expeditious and orderly adjudication of cases and controversies on their merits." *Morath v. Metro. Recovery Servs., Inc.*,

No. 07 CIV. 11081 (DLC), 2008 WL 954154, at *1 (S.D.N.Y. Apr. 8, 2008). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel*, 428 F.3d at 435.

Here, if the Court ultimately determines that venue is not proper in this district, Gemini requests in the alternative that this action be transferred to the Eastern District of New York so that it can be given the opportunity to have its coverage action adjudicated on the merits. The Eastern District of New York is a proper alternative venue because the Akermans' lawsuit against Acella is pending in that district. *See, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 358 (2d Cir. 2005) (venue proper in multiple districts, including where underlying injury and lawsuit against insured was located). Moreover, a court in that district would have personal jurisdiction over each defendant. Rather than the drastic remedy of dismissal, Gemini alternatively requests that the action be transferred to the Eastern District of New York, but only if the Court determines venue is not proper in this district.

## CONCLUSION

The nature of Gemini's claims is that there is no coverage for Acella's intentional and false advertising of its folate-containing products as part of a scheme to link them to pure folate products being prescribed to patients that included Sheila Akerman. This conduct, and the resulting binding factual and legal findings that confirm Gemini's claims, occurred in the Southern District of New York, in a case where this Court did not question venue. For these reasons, and based on judicial economy given this Court's "expertise" regarding the underlying conduct that informs the coverage inquiry, venue is proper before this Court in this district. Gemini's action should not be dismissed.

Respectfully submitted,

/s/MICHAEL FORD
**SINA BAHADORAN**
sina.bahadoran@clydeco.us
**MICHAEL DAVID FORD**
michael.ford@clydeco.us

*(Admitted pro hac vice)*

Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Tel: 305.446.2646
Fax: 305.441.2374

**SCOTT WARREN SCHWARTZ**
scott.schwartz@clydeco.us

Clyde & Co US LLP
405 Lexington Avenue
New York, New York 10174
Tel: 212.710.3900
Fax: 212.710.3950

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2018, I e-filed this document using the CM/ECF system.  I further certify that I am not aware of any non-CM/ECF participants.

/s/MICHAEL FORD
**MICHAEL DAVID FORD**