UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEMINI INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>-v-<br><br>ACELLA PHARMACEUTICALS, LLC,<br>HAROLD ARTHUR DEAS,<br>THOMAS JEFFREY BRYANT,<br>NEIL AKERMAN, and SHEILA AKERMAN,<br><br>      Defendants. | No. 18-cv-4378 (RJS)<br>**GEMINI'S REPLY TO THE DEFENDANTS' MEMORANDA REGARDING THE COURT'S *SUA SPONTE* MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |

  Plaintiff, GEMINI INSURANCE COMPANY ("Gemini") replies to ACELLA PHARMACEUTICALS, LLC's ("Acella") and NEIL AKERMAN and SHEILA AKERMAN's (collectively, the "Akermans") memoranda regarding the Court's *sua sponte* inquiry into dismissal for improper venue or, alternatively, to transfer (DE 41 and 40), and states:

  1. **At the outset, it bears emphasizing that the Akermans agree with Gemini that venue is proper in this District and agree that the *Merck* litigation is the underlying cause of action giving rise to this coverage dispute.** (DE 40, Pg. 1/4.) The Akermans' position is important as they have the most accurate insight into what acts or omissions by Acella gave rise to their own underlying lawsuit and, in turn, Gemini's declaratory judgment action regarding the existence of coverage for that lawsuit. In their answer to Gemini's complaint, the Akermans insist that "many, if not all of the facts and circumstances relating to the tortious conduct of Acella, Deas and Bryant that give rise to the injuries set forth in the *Akerman* litigation are identical to the facts and circumstances in the *Merck* litigation." (DE 37, ¶11.) In their memorandum response to the Court's *sua sponte* motion, they contend that in the interest of judicial economy, this Court should hear the parties' coverage dispute since this Court is already

familiar with the underlying cause of action—the *Merck* litigation—that forms the basis of Gemini's declaratory judgment action. (DE 40, Pg. 1/4.)

2. **Acella's memorandum focuses on the "best" venue for the coverage dispute, which is not the correct inquiry into whether venue is proper under 28 U.S.C. § 1391(b)(2).** This Court has made clear that "courts are not, in general, required to determine the 'best venue,' but merely a logical one with a substantial connection to the litigation." *Gen. Capital Partners LLC v. Liberty Ridge, LLC*, No. 07 CIV. 4089 RJS, 2007 WL 3010028, at *1 (S.D.N.Y. Oct. 12, 2007) (Sullivan, J.) Acella instead concentrates on conduct occurring in Brooklyn and Georgia, asserting that those forums have more contacts to the coverage dispute. (DE 41, Pgs. 4, 10, 13.) Gemini does not disagree that certain conduct occurred in those venues; yet, that is not the proper analysis before the Court, as venue can lie in multiple districts. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005). Moreover, the venue statute "does not require venue in the district with the most substantial contacts to the dispute." *Fisher v. Hopkins*, No. 02 CIV.7077 CSH, 2003 WL 102845, at *3 (S.D.N.Y. Jan. 9, 2003). "[T]hus venue may be appropriate in this district even if a greater portion of events occurred elsewhere." *Concesionaria DHM, S.A. v. Int'l Finance Corp.*, 307 F. Supp. 2d 553, 559 (S.D.N.Y. 2004). Acella fails to appreciate this distinction.

3. **In *Gulf Ins. Co.*, the Second Circuit instructed courts to "examine the events underlying Gulf's claims" and "to appreciate the nature of those claims" in determining whether venue is proper in a specific judicial district. 417 F.3d at 357.** As Acella's own memorandum demonstrates, there is no bright-line rule regarding the proper venue in insurance coverage actions; rather, a court must examine the events that inform the insurer's claims. The cases cited by Acella establish that venue can lie in different forums, depending on the

specific bases for the insurer's coverage position and requested declaratory relief. (*See* DE 41, Pg. 8/15.)[1] For example, in *Torus Ins. (UK) Ltd. v. Coastal Towing, LLC*, No. 14CV9785-LTS-JFC, 2015 WL 2070235 (S.D.N.Y. May 5, 2015), the declaratory judgment action involved an insured's breach of a notice provision in the insurance contract. Since the coverage dispute focused on the insured's compliance with and the court's interpretation of a contract provision, venue was proper where the insurance contract was negotiated. By contrast, in *Am. S.S. Owners Mut. Prot. & Indem. Assn., Inc. v. Am. Boat Co., LLC*, No. 11 CIV. 6804 PAE, 2012 WL 1382278 (S.D.N.Y. Apr. 20, 2012), the coverage dispute specifically depended on the nature of the underlying incident. Accordingly, venue was proper where the underlying incident occurred. Simply put, it is insufficient for Acella to merely argue that venue is proper only in the Eastern District of New York, the Akermans' suit is pending, or in the Northern District of Georgia, where the insurance contract was issued and delivered. The Court need not determine the district with the "most substantial contacts" to this dispute. Rather, Gemini need only establish that a substantial portion of the events giving rise to its claims of no coverage occurred in this District.

4. **Here, the nature of Gemini's claims is that there is no insurance coverage for Acella's false and intentional unfair trade practices regarding its folate-containing products; the underlying action giving rise to these claims is the *Merck* litigation.** Contrary to Acella's repeated assertions, Gemini's basis for venue in this district is not merely the fact that the Court issued "an adverse decision" in the Southern District of New York. It is

---

[1] Acella improperly accuses Gemini of misrepresenting the case of *Home Ins. Co. v. Liberty Mut. Ins. Co.*, 678 F. Supp. 1066 (S.D.N.Y. 1988), asserting that the court "never considered whether, or held that, venue is improper where the underlying tort happens." (DE 41, Pg. 9/15.) Of course it did. In evaluating a motion to transfer, the court was required to assess whether the plaintiff could have originally brought the action in the transferee forum. In *Home*, the court held that venue was not proper in the forum where the underlying tort occurred because it had "no connection to this declaratory judgment action" based on the unique facts and bases of the insurer's coverage position. *Id.* at 1071.

the conduct that was alleged in the *Merck* litigation, which resulted in the findings of fact and conclusions of law in the *Merck* decision, that informs Gemini's coverage position and the basis for venue. Gemini alleges in its complaint that it has no duty to defend or indemnify Acella in the Akermans' lawsuit based on several policy exclusions and endorsements: the Unfair Competition Exclusion (Count I); the Intentional or Fraudulent Acts Exclusion (Count II); the Known Critical Facts provision (Count III); and the Off-Label Promotion Exclusion (Count IV). The factual allegations to support each of these claims are Acella's intentional and deceptive conduct in the *Merck* litigation. Simply put, Gemini claims that Ms. Akerman would never have been dispensed Neurpath-B but for the intentional and deceptive "linking" practices found by the *Merck* court, and that all of the Akermans' claims are therefore excluded from coverage because they are based upon and arise out of those intentional, unfair and deceptive trade practices. Consequently, the events giving rise to Gemini's claims occurred in the Southern District of New York, and venue is proper in this District.

5.  **Gemini is not conflating its legal theory with the conduct giving rise to the coverage dispute; like most insurance declaratory judgment actions, the insurer's position is informed by the allegations, factual findings, and legal conclusions in a related, underlying lawsuit against its insured.** In its memorandum, Acella incorrectly asserts that the conduct giving rise to the *Merck* litigation "arose out of entirely different conduct" that gave rise to this coverage dispute. (DE 41, Pg. 13/15.) In actuality, the conduct is the same. The Akermans admit that the Acella product at issue in their underlying litigation, Neuropath-B, contained the Acella product Xolafin-B as its source of "folates," both of which were the products and substances at issue in the *Merck* litigation and were the subjects of this Court's binding findings of fact and conclusions of law in the *Merck* decision (DE 37, ¶11.) This dispute centers on the

4

availability of insurance coverage for Acella's intentional and unfair trade practices regarding its folate-containing products. This conduct, and the resulting binding factual and legal findings that confirm Gemini's claims, occurred in the Southern District of New York.

**6.     All parties agree that the Eastern District of New York is an appropriate alternative forum; accordingly, outright dismissal of this action would be an extreme and unnecessarily costly remedy if the Court determines venue is improper in this District.** This case is unique in that there are two "underlying lawsuits" that inform Gemini's coverage position set forth in its declaratory judgment action: the Akermans' state court action and the *Merck* litigation. Accordingly, venue is proper in both the Southern District and Eastern District of New York. In the event the Court determines that venue is improper in this District, all parties agree to a transfer to the Eastern District of New York. (DE 40, Pgs. 1, 4; DE 41, Pgs. 6, 14.) The Akermans further agree with Gemini that dismissal of this action is not warranted under the circumstances. (DE 40, Pgs. 2, 4.) Indeed, while the Court enjoys considerable discretion in determining whether to dismiss a case for improper venue or transfer it to another venue, the Second Circuit has cautioned that dismissal is more appropriate in cases that are "clearly doomed" or are "plainly lacking in merit." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005). Moreover, the Court noted at the June 25, 2018 conference that if venue was not proper, it would transfer the case to the Eastern District. (DE 42-1, Pg. 18/25.) Acella's assertion that Gemini engaged in "forum shopping" because the *Merck* decision is "unrelated to this insurance coverage dispute" is utterly false. (DE 41, Pg. 14/15.) The conduct alleged in the *Merck* decision and the resulting binding findings by this Court are the centerpiece of this insurance coverage dispute. Dismissal of this action is accordingly not warranted under the circumstances.

**CONCLUSION**

Gemini commenced this declaratory judgment action to determine whether there is insurance coverage for Acella's intentional and false advertising of its folate-containing products as part of a scheme to deceive patients that included Sheila Akerman. This conduct forms the bases for Gemini's claims and occurred in the Southern District of New York. While Acella argues that the Eastern District of New York would be a "better" venue, the law is clear that Gemini, as plaintiff, need only show that a substantial portion of the events giving rise to its claims occurred in this District, regardless of whether a greater part of the events occurred elsewhere. Gemini has met that standard, and consequently, this Court should not dismiss this action based on improper venue.

Respectfully submitted,

/s/MICHAEL FORD
**SINA BAHADORAN**
sina.bahadoran@clydeco.us
**MICHAEL DAVID FORD**
michael.ford@clydeco.us

*(Admitted pro hac vice)*

Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Tel: 305.446.2646
Fax: 305.441.2374

**SCOTT WARREN SCHWARTZ**
scott.schwartz@clydeco.us

Clyde & Co US LLP
405 Lexington Avenue
New York, New York 10174
Tel: 212.710.3900
Fax: 212.710.3950

## **CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on August 6, 2018, I e-filed this document using the CM/ECF system.  I further certify that I am not aware of any non-CM/ECF participants.

                /s/MICHAEL FORD
                **MICHAEL DAVID FORD**